Davis, J.,
delivered the opinion of the court:
The record in this case was somewhat voluminous, and the case has been twice tried on the merits. At the present trial the discussion was able and thorough on both sides, and the court is now warranted in the conviction that the facts as found reach all the points in issue and present the law in a way to do justice between the parties.
*363 In October, 1863, Richard Norris & Son. contracted with the Pennsylvania Railroad Company to deliever to them four locomotives in the following March, four in April, four in May, four in June, and four in July; in all, twenty engines.
A military necessity for locomotives for the Department of the Cumberland arose in the winter and spring of 1863-’64. In February, 1864, Norris & Sou, in response to some previous applications, wrote to the Secretary of War that ¿they would begin delivering four or five locomotives a month in May, if the government would secure a release from their contract with the Pennsylvania Company and from another contract with another railroad company; and in any event that they would give the government precedence in the manufacture of engines over all other work if it would save them harmless.
The government elected the latter proposal, and on the 16th of March, by its duly-authorized agent, agreed with them for the construction of eighteen locomotives at the earliest practicable moment, to the exclusion of all other contracts, to pay them for each locomotive as delivered $ 18,23L, and to indemnify them for any damage resulting from a compliance with the order.
Seven of the engines intended for the Pennsylvania Company were so far advanced that the material in them could not be used in filling the contract with the government. They were accordingly finished and delivered to that company within the contract time. The materials for the other thirteen engines intended for the company were used in constructing the engines for the government. After the expiration of the contract time for delivering the last thirteen engines to the company, Richard Norris & Son manufactured and delivered to it thirteen other engines, and the company received them as if manufactured aud delivered under the contract.
The eighteen engines for the government were manufactured as agreed and were paid for as agreed. The sum paid for each was slightly in excess of the $18,231 named in the contract-, in consequence of extra work ordered by the defendants after the-contract was made.
As each engine was delivered, the manufacturers presented with it a bill for the amount of the indemnity due by reason of the manufacture and the delivery of that particular engine. These bills varied slightly in language and necessarily varied *364 in amounts ; but in principle they were substantially alike. It is sufficient to quote one of them in this connection:

The United States Dr. to Diehard Dorris & Son.

For increase of cost in materials and labor on the locomotive engine and tender No. 168 (1116), seized by Col. MeOallum, by order of the honorable the Secretary of War, March 16,1864, say from October 23, 1863, the date of contract with Penh a B. B. Co., May 19,1864, viz:
Advance in wrought iron used.$1,461 30
“ cast iron. 793 15
u copper, tin, spelter, and lead. 454 70
tires.■ 210 00
“ wages of workmen. 1,625 00
Additions added by Mr. Leach, M. M.:
One No. 5 injector and attachments. 165 00
Alterations in cab, &c. 43 50
Brass works on cylinders and boiler. 75 00
$4,827 65
3 per cent. U. S. excise tax. 144 82
$4,972 41
Terms cash.
The above sum, $4,972.41, is due to us as part of the indemnity promised by the honorable the Secretary of War, in his letter to us, on the above one locomotive and tender seized by Col. D. C. MeOallum for account of the United States.
The government refused to adjust the indemnity until all the engines should be delivered. Other manufacturers as well as Bichard Norris & Son were making locomotives for it, and it appears to have been thought desirable to have one rule for adjusting these items with all. So Bichard Norris & Son went on delivering their engines and taking their pay for the contract price and the extras and presenting their bills for the indemnities, until, on the delivery of the last engine, and on being paid for it and for the extras at the contract rate, they were claiming $114,949.87 as still due them by reason of the indemnity promised to them by the agents of the government.
The defendants then fixed the sum of $25,000 for each locomotive and the government tax of $750 thereon as a sum which would properly remunerate Bichard Norris & Son and the other manufacturers for the engines which they had delivered. The *365 practical effect of tbis decision, would be, if carried into effect, to pay to Richard Norris & Sou $125,497.26 over and above the contract price for the engines and the extras instead of $114,949.87, as claimed by them.
The defendants paid to them $104,581.05, being the proportionate amount for fifteen engines, and withheld $20,916.21, the proportionate amount for the remaining three engines. Thereupon, on the 8th of June, 1865, Richard Norris & Son wrote to -General McOallum urging the payment of the remaining sum, and said, “ Will you oblige us to have this sum remitted to us, which will finally close our account f * * * We think this back claim should be paid, and hope you will order it paid.” As a result of this application the claim was paid, and Norris & Son gave a receipt therefor in full.
This settlement was scarcely completed before Richard Norris & Son advanced a further demand to be remunerated for the losses to which they were subjected by reason of the improvident contract which they had made with the Pennsylvania Company. They had made a contract by which they were bound to lose about $10,000 an engine. They maintained that the government had agreed to guarantee them against the inevitable loss which their contract had brought upon them. They said, “The prices of locomotives ranged from $20,000 to $30,000 from April, 1864, to November, 1864,” which was the period covered by the deliveries to the company and to the government. “ Colonel McOallum settled with us for the locomotives he took, building for the Pennsylvania Railroad Company, at $25,000 and government tax, or $25,750 each, but we are not indemnified as yet. for the loss we sustained by delivering of eighteen locomotives to the Pennsylvania Company, on which we received an average of $14,750 each and 3 per cent, government tax, and the actual value of the same in market on delivery. By fair dealing we think the government owe us $10,250 and 3 per cent, tax on eighteen locomotives.”
The government peremptorily refused to listen to such a claim, and thereupon this suit was brought; but the grounds of the claim were shifted when brought here, and the alleged losses were averred to have been caused by the rise in labor and materials used in eighteen locomotives to the extent of $180,000, after the locomotives could have been delivered to the company under their contract. At the trial the claim was confined to *366 tbe supposed losses on the thirteen engines delivered after the 1st of August.
We have not considered whether the contract of indemnity is capable of either of the constructions thus put upon it. We regard it as clear beyond dispute that both parties concurred in a different construction, upon which they came to an agreement which was executed. On this agreement the defendants paid a large sum of money; and the claimants accepted the payment aud gave receipts in full, without intimating that they had further or other demands to prefer under the contract of indemnity. This was an accord aud satisfaction of a disputed claim which is a complete bar to a recovery in this action.
Should the claimant seek a review of our decision, he is entitled to a finding of the amount of the losses, if any, by reason of the postponement of the delivery of the thirteen engines to the Pennsylvania Company. As we have found that amount at a much smaller sum than the amount claimed by him, we think it proper to state the principle upon which the result is reached. '
Norris & Son made their March deliveries to the Pennsylvania Company in April; they were entitled on these to the advance between March and April. They made their April deliveries, one in May, one in June, one in July, and one in August. They were entitled on them to the respective advances between April and May, June, July, and August. They made their May deliveries, two in August and two in September; their June deliveries, one in September and three in October; aud their July deliveries, two in October and two in November. In each of these cases it must be determined by the same rule whether they suffered any injury, and, if so, to what extent.
The best evidence of the fluctuation in the value of the materials and labor which actually went into the engines manufactured in the shops of Norris & Son from February to December, 1864, must have been within the claimants’ reach, but was not produced.
In lieu of it he offered, in the first place, evdence of the amount aud cost of .materials which were during that time from month to half-month aud from half-month to month put into a locomotive by another manufacturer in Philadelphia, and also evidence of the relative cost of the labor and of the material which ordinarily go into a locomotive. This evidence might have been *367 open to tbe charge of being vague, if we had been able to consider it; but on examination it also proved to be entirely at variance with the bills of actual increased cost which had been rendered by Richard Norris & Son in their bills for indemnity presented as the locomotives were delivered, and we were forced to disregard it.
The claimant has also furnished us with evidence of the market value of locomotives manufactured by Richard Norris & Son (like those furnished the Pennsylvania Company) from month to month between February and November, 1864. This appears to furnish a reasonably correct basis by which to measure the fluctuations in cost and the increasing or decreasing losses of Richard Norris & Son in delivering the promised locomotives to the Pennsylvania Company. We therefore adopt this standard. Measured by it, it appears that the whole loss for which the government could be make liable on the claimant’s own theory is $15,412; and it also appears that $10,547.39 of this amount has been already paid to the firm in the settlement which we have held to be final. The comparatively small amount of outstanding loss furnishes -additional reason for the conclusion that the parties intended to settle and did settle all their disputes in the final payment of December 30, 1865.
Judgment must therefore be entered that the claimant’s petition be dismissed.